| Candidate and Office | % Blacks Voting for Black | | % Blacks Voting for Whites | % Whites Voting for Black | % Whites Voting for Whites | | R² Strength of Relationship | Significance of Relationship |
|---|---|---|---|---|---|---|---|---|
| Rice, Auditor 11/80 | 100 | 100 | 0 | 43 | 57 | 59 | .77 | .000 |
| Dew, Cty.Clk. 11/82 | 60 | 64 | 40 | 34 | 66 | 65 | .12 | .000 |
| Jackson, Mayor 2/83 | 100 | 100 | 0 | 3 | 97 | 98 | .93 | .000 |
| Jones, Coroner 11/84 | 100 | 100 | 0 | 35 | 65 | 69 | .78 | .000 |
| Logan, Fin. Comm. 4/85 | 100 | 100 | 0 | 33 | 67 | 71 | .76 | .000 |
| Boone, Sheriff 3/86 | 79 | 82 | 21 | 18 | 82 | 78.80 | .61 | .000 |
| Trees, Clk. of Court 11/86 | 53 | 58 | 47 | 52 | 48 | 47 | .00 | .721 |
| Average Percentages | 85% | | 14% | 24% | 75% | | | |

Sheila Annetta DAWSON, Kathy Ann Schulten, Robert Terry Strong, Plaintiffs,

v.

BRISTOL LABORATORIES, Lederle Laboratories, McKesson Laboratories, Pfizer, Inc., Rexall Drug Co., Roerig, Inc., E.R. Squibb & Sons, Inc., Upjohn Co., and Unknown Defendants, Defendants.

Civ. A. Nos. 83–0937–L(J), 83–0941–L(J) and 83–0942–L(J).

United States District Court,
W.D. Kentucky,
Louisville Division.

Jan. 23, 1987.

Amended April 10, 1987.

Allen K. Gailor, Perry B. Noble, Carl Pallo, Louisville, Ky., for plaintiffs.

Winfrey P. Blackburn, W. Kennedy Simpson, Louisville, Ky., for Upjohn.

William P. Hurley, Jr., Louisville, Ky., for Rexall.

Charles S. Cassis, Mark E. Feather, Louisville, Ky., for Bristol and Lederle.

Frank P. Doheny, Jr., Philip G. Peters, Louisville, Ky., for McKesson, Pfizer, Squibb & Roerig.

## MEMORANDUM OPINION

JOHNSTONE, Chief Judge.

These cases, filed as complex actions pursuant to FED.R.CIV.P. 19, are before the court on several common pending motions. Jurisdiction exists under 28 U.S.C. § 1332.

Each plaintiff claims that defendants were responsible for manufacturing, publicizing, distributing and selling tetracycline-based drugs which the plaintiffs ingested as children during their teeth-forming years. Plaintiffs claim that the tetracycline caused a discoloration of their teeth, resulting in social and emotional damage. However, plaintiffs have not yet been able to identify the manufacturer of the particular tetracycline they ingested. Therefore, they rely on several novel theories of liability—concert of action, industry-wide or enterprise, market share, and alternative—to support their allegations against the defendants as a whole.

The several pending motions which will be addressed in this memorandum opinion include a motion to dismiss by all defendants for failure to state a claim, a motion for summary judgment by all defendants based on the statute of limitations, Upjohn's motion for summary judgment against all plaintiffs, and Rexall's motion for summary judgment against plaintiff Schulten.

## MOTION TO DISMISS

### 1. *General principles of liability.*

Defendants initially claim that plaintiffs' actions must be dismissed for failure to identify the particular manufacturer of the product which was ingested by each plaintiff. In support, defendants rely on Kentucky decisions requiring proof of the legal cause of harm to support an action based on products liability. *See Holbrook v. Rose,* 458 S.W.2d 155 (Ky.1970), *Perkins v. Trailco Manufacturing and Sales Co.,* 613 S.W.2d 855 (Ky.1981).

Plaintiffs claim that their inability to identify a particular culpable defendant should not defeat their claims on a motion to dismiss. Rather, through the use of various novel theories of liability, plaintiffs seek to shift the burden of identification to the defendants. Finally, plaintiffs state that a motion to dismiss should not be granted unless it appears that the party opposing the motion would not be entitled to relief under any state of facts, and that they should be permitted more time for discovery purposes before this court entertains thoughts of dismissal. The novel theories relied upon are addressed as follows.

### 2. *Concert of action.*

According to this theory, a plaintiff may sue a group of possible tortfeasors when unable to identify the particular tortfeasor responsible for the injury. The burden of identification is shifted to each of the defendants to prove that it was not the one responsible for the particular injury. The theory is stated as follows:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he:
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

RESTATEMENT OF TORTS (SECOND) SECTION 876.

Plaintiffs claim that by paralleling each other in manufacturing or failing to warn of the adverse consequences of tetracycline, or by independently aiding or encouraging each other's manufacture and failure to warn, defendants acted in concert within the meaning of the Restatement section cited above. *See* Complaint, para. 28. Plaintiffs also claim that an express understanding or agreement is not essential to the theory, but rather, that proof of a tacit understanding among the defendants is sufficient. *See* PROSSER, LAW OF TORTS, § 46 (4th ed. 1971).

However, defendants argue that concert of action is not a viable theory in Kentucky. The cases relied upon by the plaintiffs, defendants state, involve identifiable defendants who acted jointly to commit a tortious act. In addition, defendants claim that courts which have recognized the theory have rejected the use of "conscious parallelism" to prove the requirement of assistance or an agreement. *See Sindell v. Abbott Laboratories*, 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924 (Cal.1980).

In *Sindell, supra,* plaintiff sued several manufacturers of DES, a drug once administered to pregnant mothers to prevent miscarriages. Plaintiff claimed to suffer from cancer caused by this drug, but was unable to identify the specific manufacturer of the drug taken by her mother. Therefore, plaintiff relied on the concert of action theory and alleged that through their parallel or imitative conduct, the defendants relied upon each others' testing and promotion methods.

Although the California court recognized the concert of action theory, it rejected its application to that case, absent an allegation

> that each defendant knew the other defendants' conduct was tortious toward plaintiff, and that they assisted and encouraged one another to inadequately test DES and to provide inadequate warnings. Indeed, it seems dubious whether liability on the concert of action theory can be predicated upon substantial assistance and encouragement given

by one alleged tortfeasor to another pursuant to a tacit understanding to fail to perform an act.

*Sindell,* 163 Cal.Rptr. at 141, 607 P.2d at 933.

In another DES case, *Ryan v. Eli Lilly & Co.*, 514 F.Supp. 1004, 1016 (D.S.C.1981), the court held that for the concert of action theory to apply to a products liability case, the plaintiff must prove, in addition to parallel conduct, evidence of an agreement or plan among the manufacturers not to adequately test or not to warn of known dangers. *See also Morton v. Abbott Laboratories,* 538 F.Supp. 593 (M.D.Fla.1982).

This court has found no Kentucky cases which utilize this theory in a products liability context, where a number of potential tortfeasors are joined when the identity of the actual tortfeasor is unknown. One of the cases relied on by the plaintiffs here deals with an accident where the plaintiff maintained a single cause of action against two parties whose concurrent negligence resulted in a single, indivisible injury. Once the plaintiff established that the defendants, by concerted action, were guilty of the wrongful acts charged and that such acts were the proximate cause of the injury received, the burden shifted to each of the defendants to prove his or her own innocence. *See Murphy v. Taxicabs of Louisville, Inc.,* 330 S.W.2d 395 (Ky.1959).

Although this case and others cited by plaintiffs appear distinguishable from the facts at hand, one court has indicated the applicability of the theory to a situation similar to this one, where the culpable tortfeasor is not identified. *In re Beverly Hills Fire Litigation*, No. 77–79 (E.D.Ky. Nov. 14, 1979). In that case, plaintiffs sued several manufacturers of insulation and wire when they were unable to identify the particular defendant responsible for the fire at the Beverly Hills Supper Club. Noting that the concert of action doctrine was well-established in Kentucky, the Hon. Carl Rubin set forth three elements necessary to prove joint liability for concerted action in a products liability case.

■ First, plaintiffs must identify the product causing the harm and prove that the defendants' acts in marketing and pro-

moting the allegedly defective product were a substantial factor in causing the plaintiff's injuries. *Beverly Hills, supra,* at 8. Second, plaintiffs must establish that the defendants acted by cooperative or concerted activities. Although an express or tacit agreement may be sufficient, Judge Rubin held that neither allegations of parallel activity nor independent adherence to industry-wide safety standards were sufficient to meet this element. *Id.* at 11. Finally, plaintiffs must prove defendants contravened a particular standard of care. *Id.* at 12.

■ In this case, plaintiffs have alleged that tetracycline, manufactured in one form or another by all the defendants, caused the staining of their teeth, and that defendants failed to adequately warn of this defect. Furthermore, plaintiffs allege that defendants, either through parallel activities, *or independently,* acted to encourage each other's failure to adequately warn. (emphasis added). Finally, plaintiffs allege that defendants acted negligently, failed to warn of the possible side-effects of the drug of which they should have been aware, and breached implied warranties with respect to the drugs.

Motions to dismiss for failure to state a claim are "not favored and should be granted sparingly and with caution only where it appears to a certainty that no set of facts could be proven at trial which would entitle a plaintiff to any relief." *Dann v. Studebaker-Packard Corp.,* 288 F.2d 201, 216 (6th Cir.1961). Therefore, since there is some indication that Kentucky courts will recognize the concert of action theory in this context, and since plaintiffs have alleged the elements necessary for such a cause of action, plaintiffs should be permitted to pursue this claim through the discovery stage. If, at that point, it appears that plaintiffs have failed to meet their initial burdens, this court will entertain motions for summary judgment with respect to this claim.

### 3. *Alternate liability.*

■ Plaintiffs also urge application of this theory, which provides that where two or more actors act tortiously, resulting in harm to the plaintiff which can not be specifically identified to one of the actors, the burden is on each of the actors to prove he is not the cause of the harm. RESTATEMENT OF TORTS (SECOND) Section 433B. However, Kentucky courts have indicated a reluctance to adopt such a theory.

■ In *Cox v. Cooper,* 510 S.W.2d 530 (Ky.1974), the court held erroneous an instruction which shifted the burden of proving freedom from negligence to the two defendants. In addition, in *Beverly Hills, supra,* Judge Rubin held that Kentucky did not recognize the alternate liability theory, citing *Cox.* Therefore, absent Kentucky law to the contrary, this court declines to apply the alternate liability theory to this situation. *See also Morton, supra,* and *Ryan, supra.*

### 4. *Enterprise liability.*

■ This theory, which appears to combine concepts from the concert of action and alternate liability theories, provides that where a particular industry controls risks attendant to its product through the use of industry-wide standards, the industry as a whole can be held liable for jointly controlling the risk. However, this theory can be found in only one case, *Hall v. E.I. duPont de Nemours & Co.,* 345 F.Supp. 353 (E.D.N.Y.1972). In *Hall,* manufacturers of blasting caps were sued for omitting warnings and failing to use other precautions. Since the number of manufacturers was relatively small (six) and since they had delegated safety functions to a trade association, and thus, jointly controlled the risk, the court held all manufacturers liable under this theory.

However, courts in subsequent cases have declined to apply this theory. *See Sindell, Ryan, Morton, Beverly Hills, supra.* This court is reluctant to hold otherwise, and again, grants the motion to dismiss with respect to this theory.

### 5. *Market share.*

Finally, plaintiffs rely on the theory developed by the court in *Sindell, supra,* which shifts the burden to each defendant to prove it did not manufacture the product

in question. If a manufacturer is unable to produce such proof, it is liable for the portion of the judgment which represents its share of the market for that particular product.

Again, there is no Kentucky authority in support of this theory. The theory, according to the *Sindell* court, is an expansion of the alternate liability theory espoused in *Summers v. Tice*, 33 Cal.2d 80, 199 P.2d 1 (1948). Since, from all indications, Kentucky does not accept the alternate theory of liability, this court declines to adopt an extension of that theory.

In conclusion, plaintiffs present support for a finding of a viable cause of action in the concert of action theory. Therefore, the motion to dismiss this cause of action is denied. However, absent further direction from the Kentucky courts indicating a diversion from traditional product liability requirements of proof of legal causation, this court declines to fashion new Kentucky law and grants the motion to dismiss with respect to the alternate, enterprise, and market-share theories of liability.

## SUMMARY JUDGMENT MOTION— STATUTE OF LIMITATIONS

### 1. *Products liability.*

Defendants claim that plaintiffs' products liability claims are barred by KY.REV. STAT. 413.140(1)(a), which provides that actions for injuries to persons must be "commenced within (1) one year after the cause of action accrued." All plaintiffs filed their actions on September 21, 1983, within one year of the date on which a newspaper article reporting these effects of tetracycline appeared.

However, defendants claim that since plaintiffs were all admittedly aware of their teeth discoloration since their elementary school days, that they were required to file their actions within one year of the date on which they reached the age of majority. Defendants claim that the "discovery" rule in Kentucky only tolls the statute of limitations up until the time that the harmful effect manifests itself. *Hall v. Musgrave*, 517 F.2d 1163, 1177 (6th Cir.

1975), *Conway v. Huff*, 644 S.W.2d 333, 334 (Ky.1982).

The court in *Louisville Trust Co. v. Johns-Manville Products*, 580 S.W.2d 497 (Ky.1979), however, modified the discovery rule in products liability cases where the injury and the discovery of the causal relationship do not occur at the same time. Specifically, the court adopted language from the New Hampshire Supreme Court in *Raymond v. Eli Lilly*, 117 N.H. 164, 371 A.2d 170, 174 (1977), which held:

> We believe that the proper formulation of the rule and the one that will cause the least confusion is the one adopted by the majority of courts: A cause of action will not accrue under the discovery rule until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct.

This was reaffirmed in *Imes v. Touma*, 784 F.2d 756, 758–9 (6th Cir.1986), where the court further held that whether or not the plaintiff in such an action should have known that his injury was the result of someone's negligence is a question of fact to be decided by a jury.

In this case, although all three plaintiffs were aware of the discoloration of their teeth, they claim they were unaware that it was caused by the negligence of anyone or anything until they read the newspaper article which appeared on September 22, 1982. Therefore, under *Louisville Trust* and *Imes, supra*, their complaints, which were filed within a year of that article, were timely and the question of whether they should have known that the discoloration was a result of someone's negligence is not proper for summary judgment disposition. FED.R.CIV.P. 56; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

### 2. *Breach of warranty.*

Defendants state that these claims should be dismissed for lack of privity under KY.REV.STAT. 355.2–318, and also as barred by the applicable statute of limitations, KY.REV.STAT. 355.2–725(2).

According to Ky.Rev.Stat. 355.2–318,

A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

Thus, in order to assert a cause of action based on breach of warranty, direct privity must exist. Defendants claim that plaintiffs were not in direct privity with them within the meaning of the statute.

Defendants also state that plaintiffs did not file this claim within the statute of limitations. According to Ky.Rev.Stat. 355.2–725(1) and (2),

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued....

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender or delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of performance the cause of action accrues when the breach is or should have been discovered.

Defendants claim that since all plaintiffs were aware of their teeth discoloration at early ages, the four-year statute of limitations expired prior to the filing of these actions. However, plaintiffs claim that they anticipate finding, through future discovery, that the warranties extended by the defendants related to future performance of the goods, and therefore, that they would then fall within the exception to the four-year rule.

■ With respect to both the privity and statute of limitations issues in the context of a breach of warranty, this court finds many unresolved facts which are necessary prior to a ruling on this matter. First, this court has no information concerning the identity of the sellers or the buyers of the tetracycline in each of the cases. Such information is necessary to make an adequate decision on the privity issue. Next, as plaintiffs note in their briefs, little discovery has taken place and no evidence exists concerning the types of warranties extended by the defendants. Again, the type of warranty is essential to a determination that plaintiffs do or do not fall within the exception provision of the four-year statute of limitations.

Therefore, this court will stay a ruling on this particular issue for 90 days in order to provide the parties with an opportunity for limited discovery on these issues. At the end of that time, the parties shall submit memoranda containing the answers to the above questions, plus any other relevant facts or recent relevant court decisions. This court will then reconsider the summary judgment motions in light of that information.

## UPJOHN SUMMARY JUDGMENT MOTION

According to the testimony of each of the plaintiffs, the tetracycline which they ingested was red, orange or pink in color and was contained in a clear bottle or container. Upjohn has presented proof, uncontradicted by the plaintiffs, that the forms of tetracycline which it manufactured were either yellow or orange in color, and were contained in amber colored bottles.

Based on this evidence, Upjohn moves for summary judgment. Since each of the plaintiffs' theories shifts the burden of proof to the defendants, Upjohn now claims to have met its burden of proof that it was not the manufacturer of the tetracycline ingested by plaintiffs Schulten, Dawson or Strong.

In response, plaintiffs suggest that even though they remember the tetracycline as red, orange or pink, and in clear containers, it is possible that their recollection is erroneous. Specifically, plaintiffs state at page 5 of their response brief:

It is quite obvious that distorted memory could have produced recollection concerning coloration which is at variance with the colorations appending Upjohn's Tetracycline syrups. In any event it is a

questons (sic) of fact, for the tryer (sic) of fact, whether the recollection of orange instead of yellow sufficiently demonstrates that Upjohn could not have produced the product ingested by Plaintiffs.

A motion for summary judgment is proper absent a material dispute of facts and when the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In addition, when a party moves for summary judgment, the adverse party

> may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*Rogers v. Tennessee Valley Authority*, 692 F.2d 35, 38 (6th Cir.1982); FED.R.CIV.P. 56(e).

 In this case, plaintiffs present no evidence to dispute or contradict Upjohn's claims that it did not manufacture the types of tetracycline ingested by the plaintiffs. Even analyzing this under the concert of action theory, plaintiffs can not prevail, since defendant Upjohn has borne its burden of proving that it did not manufacture the tetracycline ingested by the plaintiffs.

## REXALL SUMMARY JUDGMENT MOTION

Rexall also has filed a motion for summary judgment against plaintiff Schulten. With respect to this case, Rexall states that the only tetracycline drugs it sold were Rexamycin capsules and Rexamycin syrup (otherwise known as Tetracycline Hydrochloride). Yet, in her answers to interrogatories, Schulten states that she believes the brand names of the drugs which she ingested were Aureomycin or Achromycan. Based on these differences, Rexall claims entitlement to dismissal. Strangely enough, plaintiff Schulten has never responded in any form to this motion or the statements contained in it.

Based on the summary judgment law cited above, this court will grant Rexall's motion for summary judgment. There are no disputes of fact in this case with respect to these issues, especially since plaintiff Schulten never responded to Rexall's motion or allegations. The court must remind the parties of the penalties attendant to violations of FED.R.CIV.P. 11.

An appropriate order shall accompany this memorandum opinion.