CAESARS RIVERBOAT CASINO, LLC
and Harrah's Entertainment, Inc.,
Appellants

v.

Carla BEACH, Appellee.

No. 2009–SC–000634–DG.

Supreme Court of Kentucky.

March 24, 2011.

James Louis Fischer, Jr., Tyson P. Schroeder, Boehl, Stopher & Graves, LLP, New Albany, IN, Counsel for Appellants.

Donald Matthew Kannady, Terry Eugene Goodspeed, Winters & Yonker, PSC, Louisville, KY, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Appellants, Caesars Riverboat Casino, LLC, an Indiana limited liability company, and Harrah's Entertainment, Inc., a Delaware corporation, neither of which is domiciled in Kentucky, appeal from an opinion of the Court of Appeals subjecting them to personal jurisdiction in Kentucky in a slip and fall lawsuit brought by Appellee, Carla Beach, a Kentucky resident. The Court of Appeals determined that Appellants' contacts with this state satisfied our long-arm statute, KRS 454.210, and the federal due process requirements as described in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny, thereby authorizing Kentucky courts to exercise personal jurisdiction over Appellants in relation to the incident.

Upon review, we conclude that personal jurisdiction over Appellants is not permit-

ted under KRS 454.210 because Appellee's claim does not arise from any of the activities, contacts, or circumstances identified in our long-arm statute as an essential predicate for Kentucky's exercise of *in personam* jurisdiction over a nonresident. Accordingly, we reverse the decision of the Court of Appeals, and reinstate the order of the Shelby Circuit Court dismissing the complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellants, Caesars Riverboat Casino and Harrah's Entertainment, Inc., jointly operate a casino gambling boat docked on the northern shore of the Ohio River in Elizabeth, Indiana, near Louisville. The boat's facilities include a casino, hotel, retail stores, and several restaurants. They maintain no office or business facilities in Kentucky.[1]

At the time of the incident, Appellee was a resident of Shelby County, Kentucky. She also was a frequent patron of the casino boat and a holder of a "Total Rewards Gold Card," a program sponsored by Appellants to promote player participation and loyalty to the casino and related premises. In order to encourage Kentucky residents to visit their casino, Appellants engage in extensive in-state radio, television, and billboard advertisement. They engage in direct mail advertising, especially to the regular customers on their mailing list. They also engage in charitable and civic activities in Kentucky, including a substantial sponsorship of the Kentucky Derby Festival. As a result, and in combination with their location just across the state line, approximately fifty percent of Appellants' revenue is derived from Kentucky residents.

Appellee filed a Complaint against Appellants in Shelby Circuit Court alleging that, "[w]hile in line for the [casino] buffet, suddenly and without warning, [she] slipped on butter that had been allowed to remain on the floor and fell violently to the floor, causing [her] to sustain serious injuries and damages." Specifically, she alleged that Appellants "as owners and operators of a retail establishment, negligently: (a) failed to maintain the floor of the eating establishment in a reasonably safe condition; (b) allowed butter to come into contact with and remain on the floor of the eating establishment when [Appellants] knew, or in the exercise of reasonable care, should have known that the substance created an unreasonable risk of harm to customers in the store [sic]; (c) failed to warn [Appellee] of the danger presented by the presence of butter on the floor; and (d) failed to otherwise exercise due care with respect to the matter alleged in this complaint."

Appellants moved to dismiss the claim under CR 12.02, arguing that the Shelby Circuit Court lacked personal jurisdiction over them because neither Caesars nor Harrah's owned or maintained property in Kentucky, nor had they any employees or agents who were located in or conducted business in Kentucky, and that Appellee's injury and Appellants' alleged negligence occurred in Indiana. Appellee argued in response that Appellants had sufficient contacts with Kentucky for the court to exercise personal jurisdiction over them as to her cause of action.

---

1. The parties agree with the factual background as stated in the Court of Appeals's opinion. We accordingly model our discussion of the relevant facts on the Court of Appeals's discussion of the factual background, including those facts relating to Appellants' Kentucky contacts described in the federal district court case *Ford v. RDI/Caesars Riverboat Casino, LLC*, 503 F.Supp.2d 839 (W.D.Ky.2007), the accuracy of which is also stipulated by the parties.

The circuit court found that it lacked personal jurisdiction over Appellants, holding that while there was "a strong argument to be made" that Appellants purposefully availed themselves of the forum state, Appellee's cause of action "did not arise from the direct mailings she received, the advertisements [Appellants] directs toward Kentucky consumers, or any other contacts between [Appellants] and Kentucky."

On appeal, the Court of Appeals, relying heavily upon *Ford v. RDI/Caesars River-boat Casino, LLC*, 503 F.Supp.2d 839 (W.D.Ky.2007), determined that the "operative facts underlying [Appellee's] cause of action are clearly related to Caesars' contact within the state of Kentucky," and that there "can simply be no dispute that Caesars transacts substantial business in Kentucky and also maintains continuous and systematic contacts within Kentucky especially through the promotions, solicitations and inducement of Kentucky residents to utilize its facilities located a few feet from Kentucky's border." Based upon these contacts, the Court of Appeals stated:

> We believe these are precisely the type of contacts contemplated under Kentucky's long-arm statute to trigger personal jurisdiction. To conclude otherwise would mean that *in personam* jurisdiction in Kentucky under KRS 454.210 would not extend to the outer limits of the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution in this case or in any similar factual situation, but rather be limited to the banks ... of the Ohio River. Accordingly, the assertion of personal jurisdiction over [A]ppellees in this case does not violate constitutional due process and is otherwise reasonable.

■ We granted Appellants' motion for discretionary review to examine the limitations placed by our long-arm statute upon the exercise of personal jurisdiction over an out-of-state defendant for an out-of-state tort, and to evaluate the ongoing viability of this Court's statements in prior cases to the effect that our long-arm statute extends to the limits of, and thereby merges into, the limits of federal due process. Because the question of whether Kentucky may exercise jurisdiction over Appellants under our long-arm statute and federal due process is an issue of law, our review is de novo. *Appalachian Regional Healthcare, Inc. v. Coleman*, 239 S.W.3d 49, 53–54 (Ky.2007) ("The question of jurisdiction is ordinarily one of law, meaning that the standard of review to be applied is *de novo*.").

## *KRS 454.210—LONG–ARM STATUTE*

The purpose of Kentucky's long-arm statute, KRS 454.210, "is to permit Kentucky courts to exercise personal jurisdiction over nonresident defendants while complying with federal constitutional due process." *Cummings v. Pitman*, 239 S.W.3d 77, 84 (Ky.2007). Because KRS 454.210(2)(a) [2] is fundamental to our review in this case, we begin our analysis by setting out the relevant provisions of the statute in full:

> (2) (a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:
>
> 1. Transacting any business in this Commonwealth;
>
> 2. Contracting to supply services or goods in this Commonwealth;
>
> 3. Causing tortious injury by an act or omission in this Commonwealth;

**2.** KRS 454.210(1) defines "person" and is not relevant to any issue undertaken herein.

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth;

5. Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this Commonwealth when the seller knew such person would use, consume, or be affected by, the goods in this Commonwealth, if he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth;

6. Having an interest in, using, or possessing real property in this Commonwealth, providing the claim arises from the interest in, use of, or possession of the real property, provided, however, that such in personam jurisdiction shall not be imposed on a nonresident who did not himself voluntarily institute the relationship, and did not knowingly perform, or fail to perform, the act or acts upon which jurisdiction is predicated;

7. Contracting to insure any person, property, or risk located within this Commonwealth at the time of contracting;

8. Committing sexual intercourse in this state which intercourse causes the birth of a child when:

a. The father or mother or both are domiciled in this state;

b. There is a repeated pattern of intercourse between the father and mother in this state; or

c. Said intercourse is a tort or a crime in this state; or

9. Making a telephone solicitation, as defined in KRS 367.46951, into the Commonwealth.

(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.

As a point of emphasis, even though the statute identifies nine particular instances of conduct upon which personal jurisdiction over a nonresident may be predicated, the first sentence of subsection 2(a) imposes a critical limitation on the statute's operation: the cause of action must "aris[e] from" the identified conduct. That point is reinforced by its inclusion in subsection 2(b), limiting the joinder of any ancillary claim to those also "aris[e] from" acts contained within the enumerated section of the statute. Thus, personal jurisdiction cannot be exercised over a non-resident defendant simply because it has engaged in conduct or activity that fits within one or more subsections of KRS 454.210(2)(a). The plaintiff must also show that his claim is one that arises from the conduct or activities described in the subsection.

In a series of cases addressing KRS 454.210, it appears the perception has developed that our long-arm statute has lost its identity, having been subsumed and, in effect, overridden by federal due process jurisdictional standards. This perception is illustrated by discussion of the statute in *Wilson v. Case*, 85 S.W.3d 589 (Ky.2002), wherein this Court stated:

*In practice, the precise language of the statute and the application of its terms*

*are much less important than the simple fact that the statute exists.* Courts have determined that 'the long-arm statute within this jurisdiction allows Kentucky courts to reach to the full constitutional limits of due process in entertaining jurisdiction over non-resident defendants.' *Mohler v. Dorado Wings, Inc.,* Ky.App., 675 S.W.2d 404, 405 (1984); *Info–Med, Inc. v. Nat'l Healthcare, Inc.,* 669 F.Supp. 793 (W.D.Ky.1987)....

For our purposes here, '*the traditional two step approach of testing jurisdiction against first statutory and then constitutional standards is therefore collapsed into the single inquiry of whether jurisdiction offends constitutional due process.*' *First Nat'l Bank of Louisville v. Bezema,* 569 F.Supp. 818, 819 (S.D.Ind. 1983) (referring to the Indiana long-arm statute which is similar to Kentucky's and has likewise been held to extend to the outer limits of due process).

*Id.* at 592 (emphasis added); *see also Cummings,* 239 S.W.3d at 84–85 ("We have interpreted this statute to authorize *in personam* jurisdiction to reach the outer limits of the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution and because of this breadth, our statutory requirements have merged into the federal due process analysis."); *Mohler v. Dorado Wings, Inc.,* 675 S.W.2d at 405 "It is a well-settled principle of law that the long-arm statute within this jurisdiction allows Kentucky courts to reach to the full constitutional limits of due process in entertaining jurisdiction over non-resident defendants." (citing *Poyner v. Erma Werke Gmbh,* 618 F.2d 1186 (6th Cir.1980)); *Davis H. Elliot Co., Inc. v. Caribbean Utilities Co., Ltd.,* 513 F.2d 1176, 1181 (6th Cir.1975) ("[W]e hold, in light of the factors discussed above, that the limits of personal jurisdiction conferred by KRS 454.210(2)(a)(1) are coextensive with the boundaries of the due process clause.").

It is fundamental that in determining the meaning of a statute, we must defer to the language of the statute and are not at liberty to add or subtract from the legislative enactment or interpret it at variance from the language used. *Johnson v. Branch Banking and Trust Co.,* 313 S.W.3d 557, 559 (Ky.2010). Upon application of this principle, an examination of the long-arm statute discloses no language indicating that its provisions should, *per se,* be construed as coextensive with the limits of federal due process. To the contrary, the statute sets forth nine specific provisions defining the kinds of activity that will allow a Kentucky court to exercise personal jurisdiction over a nonresident defendant. While we believe it fair to say that these provisions should be liberally construed in favor of long-arm jurisdiction, their limits upon jurisdiction must be observed as defined. Thus, non-resident defendants whose activities fall outside the criteria of KRS 454.210 may not be subjected to long-arm jurisdiction. In addition, as previously noted, even when the defendant's conduct and activities fall within one of the enumerated categories, the plaintiff's claim still must "arise" from that conduct or activity before long-arm jurisdiction exists. Claims based upon contacts, conduct, and activities which may not fairly be said to meet one of these explicit categories must be held to be outside of the reach of the statute, regardless of whether federal due process might otherwise allow the assertion of *in personam* jurisdiction.

Moreover, we note that if the intent of the statute were to reach the outer limits of federal due process, it could easily have been drafted to say precisely that. In this vein, we note that some jurisdic-

tions have phrased their long-arm statutes in just this way. *See, e.g.,* Iowa Code § 1.306 ("Every corporation, individual, personal representative, partnership or association that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state, and the courts of this state shall hold such corporation, individual, personal representative, partnership or association amenable to suit in Iowa in every case not contrary to the provisions of the Constitution of the United States."). Only after the requirements of KRS 454.210 have been satisfied can it be said that personal jurisdiction over a non-resident extends to the outer limits permitted by federal due process. Federal due process cannot act to expand the reach of Kentucky's long-arm statute beyond its statutory language.

*Wilson* and like cases imply that, when examining personal jurisdiction over a nonresident defendant, one may skip past KRS 454.210 and proceed directly to a federal due process analysis. We believe this is a misconception. The reach of Kentucky's long-arm jurisdiction is a policy choice of the General Assembly, limited by federal and state constitutional considerations. KRS 454.210 is the legislature's expression of that policy, and, as such, the statute operates independently of federal due process analysis. Thus, we clarify that proper deference to the language of the statute compels that, as an initial step, review is necessary to determine whether long-arm jurisdiction over a foreign defendant is permissible under KRS 454.210. *Banco Ambrosiano, S.P.A. v. Artoc Bank & Trust Ltd.,* 62 N.Y.2d 65, 476 N.Y.S.2d 64, 464 N.E.2d 432, 435 (1984) ("Importantly, in setting forth certain categories of bases for long-arm jurisdiction, [the New York long-arm statute] does not go as far as is constitutionally permissible. Thus, a situation can occur in which the necessary

contacts to satisfy due process are present, but *in personam* jurisdiction will not be obtained in this State because the statute does not authorize it.").

■ In summary, the proper analysis of long-arm jurisdiction over a nonresident defendant consists of a two-step process. First, review must proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then *in personam* jurisdiction may not be exercised. When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights. To the extent *Wilson, Cummings,* and like cases hold otherwise, they are overruled.

### APPELLANTS TRANSACTED BUSINESS IN KENTUCKY AS SET FORTH IN KRS 454.210(2)(a)(1)

Turning to the present case, we now apply the two-step process to determine if the Shelby Circuit Court could properly assert personal jurisdiction over the Appellants. First, we examine whether Appellants' Kentucky-related activities fall within any of the enumerated provisions as set forth under KRS 454.210(2)(a). Provisions two, and five through nine, may be quickly eliminated because the types of activities and conduct defined therein have no application at all to either the subject matter of this litigation or the types of contacts, conduct, and activities at issue in this case.

Provision three directly addresses the general subject matter of this litigation, "[c]ausing tortious injury." However, this provision does not apply because it includes the requirement that the tortious

injury have occurred by an act or omission "in this Commonwealth." The incident alleged in Appellee's complaint, as well as the "act or omission" which produced it (i.e., the butter on the floor), occurred in Indiana.

Provision four directly implicates the type of conduct engaged in by Appellants, that is, solicitation of business by media advertising and direct mail advertising, and the provision is cited by Appellee in support of Kentucky jurisdiction. However, like provision three, this provision also requires the tortious injury to have occurred "in this Commonwealth," and is, therefore, also inapplicable.

Having eliminated provisions two through nine of KRS 454.210(2)(a) as possible grounds for long-arm jurisdiction over Appellants, only KRS 454.210(2)(a)(1) remains as a possible basis for litigation in this Commonwealth. This provision permits long-arm jurisdiction against defendants "[t]ransacting any business in this Commonwealth." Appellants' conduct consisting of mass media and billboard advertising in Kentucky, direct mail advertising to Kentucky residents, preferred customer incentives directed to Kentucky residents, and substantial civic and charitable activities in the Commonwealth would certainly qualify as "transacting business" in the state. Further, fifty percent of Appellants' casino boat revenue is derived from Kentucky residents. Nevertheless, as noted, personal jurisdiction is authorized under the statute only if Appellee's claim "arises from" the statutory provision upon which long-arm jurisdiction is predicated.

*APPELLEE'S CLAIM AGAINST APPELLANTS DOES NOT ARISE FROM APPELLANTS TRANSACTING BUSINESS IN KENTUCKY*

■ We do not disagree with the Court of Appeals's conclusion that Appellants' activities constitute substantial contacts with Kentucky that surpass the minimum due process requirements. But, as previously noted, in order for the long-arm statute to apply, the plaintiff's claim must have "aris[en] from" the conduct and activities of the defendant described in the applicable statutory provision.

The phrase "arising from" may reasonably be subject to various interpretations. In this vein, Appellee alleges that her claim "arose from" Appellants' activities in the state because, *but for* those activities attracting her to patronize the casino boat, she would not have been there that day to slip on the butter. However, for the reasons discussed below, we believe this view of the terminology stretches the phrase "arising from" beyond reasonable bounds.

■ "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Hall v. Hospitality Resources, Inc.*, 276 S.W.3d 775, 784 (Ky.2008). Here, we discern no intent within the statute to connote a particular legal or technical meaning to the words "arising from." Accordingly, we will apply their common, ordinary meaning. As relevant here, the verb "to arise" means: "2 a: to originate from a source; b: to come into being...." *See Merriam–Webster Dictionary Online*, http://www.merriam-webster.com/dictionary (last viewed Mar. 16, 2011). In order for Appellee to prosecute her claim in Kentucky under KRS 454.210(2)(a)(1), her cause of action must have originated from, or came into being, as a result of Appellants' "transacting business," that is, its advertising and other activities, in Kentucky.

■ Thus, in evaluating the meaning of KRS 454.210's use of the phrase, "as to claims arising from," the wrongful acts of

the defendant alleged in the plaintiff's complaint must originate from the actions or activities that form the applicable statutory predicate for assertion of long-arm jurisdiction. Conversely, the statutory foundation for the assertion of long-arm jurisdiction must be the source of the plaintiff's cause of action. If there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction, then jurisdiction is properly exercised. Whether such a connection exists will often be self-evident, especially when the claim is based upon tortious injury that occurs in this state or upon contracts to supply goods in this state. However, no general rule can be expressed to take into account the unlimited factual possibilities that can arise, and the analysis must necessarily be undertaken on a case by case basis. Trial courts will ultimately have to depend upon a common sense analysis, giving the benefit of the doubt in favor of jurisdiction.

The wrongful act alleged in Appellee's claim is the failure of Appellants to keep their premises safe for business invitees by negligently permitting spilled butter to remain on its flooring and/or failing to warn its customers of the danger. The statutory predicate proffered for exercising personal jurisdiction over Appellants is KRS 454.210(2)(a)(1), "[t]ransacting any business in this Commonwealth," which here consists of Appellants' extensive advertising, direct mail solicitations, a rewards program, and extensive civic and charitable activities. A comparison of the wrongful acts underlying Appellee's claim to the Appellants' conduct and activities in this Commonwealth yields the conclusion that the wrongful conduct has no relation at all to the business Appellants transact in this Commonwealth. That is, there is no reasonable and direct nexus between Appellants' marketing activities and charitable conduct in this Commonwealth and the negligent acts or omissions in Indiana that produced Appellee's fall.

The Court of Appeals addresses the point with its conclusion that Appellants' contacts in Kentucky "clearly contributed to [Appellee's] presence on Caesars' premises." However, that link between Appellants' activities in Kentucky and Appellee's slip and fall is far too attenuated to fit within the definition of "arising from." Appellee's presence at the Indiana Casino did not cause her injury. Her claim arises from the butter negligently left on the floor. That Appellee might have not have been on the casino boat premises that day *but for* the allure of Appellants' promotional activities in Kentucky does not alter that fact. Such reasoning is also too subjective, for it bases personal jurisdiction over the non-resident defendants upon Appellee's subjective reason for being on the Indiana casino premises.

Simply put, there is no *reasonable and direct* nexus between the conduct that caused Appellee's injury and Appellants' business activities in Kentucky. Consequently, Appellee's cause of action does not fall within the reach of KRS 454.210(2)(a)(1).

Because Appellee's cause of action does not arise from any of the enumerated provisions contained in the long-arm statute, Kentucky courts lack personal jurisdiction over Appellants in this matter. We therefore need not determine whether the exercise of *in personam* jurisdiction over Appellants would offend federal due process standards.

## CONCLUSION

For the foregoing reasons, the decision of the Court of Appeals is reversed, and the order of the Shelby Circuit Court dis-

missing the Appellee's claims against the Appellants is hereby reinstated.

All sitting. All concur.