Carolyn S. WORRELL, Individually and as Trustee and Beneficiary of the Robert L. Stivers Revocable Trust Dated November 5, 1991, Trust B Under the Robert L. Stivers Revocable Trust Dated November 5, 1991, and the Robert L. Stivers, Jr. Irrevocable Trust Under Trust Agreement Dated November 5, 1991, and as a Beneficiary of the Audrey F. Stivers Estate and/or as an Heir at Law of the Audrey Stivers' Estate, Appellants

v.

Melinda J. STIVERS, Individually and as Guardian/Conservator of Audrey F. Stivers, as Personal Representative of the Estate of Audrey F. Stivers, and as a Beneficiary of the Robert L. Stivers Jr. Revocable Trust Under Trust Agreement Dated November 5, 1991, Trust B of the Robert L. Stivers, Jr. Revocable Trust Under Trust Agreement Dated November 5, 1991, and the Robert L. Stivers, Jr. Irrevocable Trust Under Trust Agreement Dated November 5, 1991, and as Beneficiary and/or as an Heir at Law of the Audrey F. Stivers Estate, Appellees

NO. 2015–CA–001114–MR

Court of Appeals of Kentucky.

FEBRUARY 17, 2017; 10:00 A.M.

BRIEF FOR APPELLANT: J. Robert Lyons, Jr., Lexington, Kentucky

BRIEF FOR APPELLEE: Jason S. Morgan, Cynthia L. Effinger, Lexington, Kentucky

BEFORE: CLAYTON, DIXON, AND D. LAMBERT, JUDGES.

## OPINION

CLAYTON, JUDGE:

Carolyn S. Worrell, in her individual and representative capacities, appeals the Fayette Circuit Court's grant of a motion to dismiss based on its decision to decline discretionary personal jurisdiction under Kentucky Revised Statutes (KRS) 454.210, Kentucky's Long Arm Statute. After careful consideration, we vacate and remand for a determination of whether *in personam* jurisdiction existed.

## BACKGROUND

This matter involves a dispute between two nonresident siblings, Carolyn S. Worrell and Melinda J. Stivers, over the estate of their mother, Audrey F. Stivers, who died testate, as a resident of the state of Montana, on April 2, 2014. Carolyn is a resident of Virginia, and Melinda is a resident of Montana.

At the time of her death, Audrey had an interest in trusts established by her deceased husband, Robert L. Stivers. Robert created two trusts, a revocable trust and an irrevocable trust, both under trust agreements dated November 5, 1991. Robert was the trustee of the trusts but after his death, Audrey became the successor trustee. As a trustee, she made disbursements to herself as ostensibly authorized under the trust documents. It was not necessary for these trusts to pass through

probate since they were given to the sisters on the terms of the trust.

A probate action was filed in the Twelfth District of Montana. Melinda, who had already been appointed her mother's guardian/conservator, was appointed personal representative on May 15, 2014. Carolyn maintains that she did not receive notice of the opening and closing of the Montana estate. Melinda contests this allegation. Nonetheless, she has reopened the Montana estate to address any further claims regarding her mother's estate.

Melinda commenced the ancillary probate action concerning her mother's Kentucky real property in Fayette District Court. The real property is the only asset in the ancillary estate. The property was owned by Carolyn and her mother as tenants-in-common. The mother's share was devised to Melinda. During the last few years, Carolyn handled the leasing of the property. In the ancillary probate action, Melinda made claims against Carolyn about the income from the real property and also sought an accounting. (Nonetheless, no evidence has been provided in the record about the real property, including a copy of the probate matter.)

After the probate matter was filed, Carolyn, who, upon Audrey's death became the trustee for the trusts, made a statement of claim in Fayette District Court about the income from the revocable trust. She maintains that during her mother's lifetime, Audrey improperly disbursed $293,870 from the trust. Carolyn sought to recoup this amount plus lost earnings and appreciation. In response, Melinda, as personal representative of the estate, filed a "Notice of Disallowance of the Claim," and gave sixty-day notice for filing suit on the claim. Subsequently, Carolyn filed this Complaint against the Estate.

Prior to the filing of these actions, Carolyn and Melinda engaged in settlement negotiations in an attempt to resolve the dispute related to the trust, the real property, and certain personal property. They enlisted attorneys in Kentucky for these negotiations, but neither sister entered Kentucky for the purpose of negotiating the agreement or contemplated that performance of any actions in Kentucky. The possible terms of the negotiated settlement addressed issues of Audrey's personal property, the trust, but only one term related to the real property, the subject of the ancillary probate action.

Carolyn contends that the parties reached a "Letter Agreement." She supports this contention by supplying e-mails between the attorneys during the negotiation process. Nonetheless, while correspondence between the attorneys concerning the negotiations were provided in the record, no final settlement agreement appears to have been reached. At least, no signed agreement between the sisters was provided for the record.

After the negotiations broke down, Carolyn filed the aforementioned complaint against Melinda. In the Complaint, Carolyn asks that the trial court enforce the purported settlement agreement and that the Estate reimburse the trust for the alleged wrongful disbursements from the trust.

In response, Melinda made a motion for the trial court to dismiss this action in its entirety because, according to her, the trial court lacks subject matter jurisdiction and personal jurisdiction to adjudicate the dispute. Carolyn responded to the motion to dismiss by asserting that the Fayette Circuit Court had both subject matter and personal jurisdiction, and therefore, the motion to dismiss should be denied.

Notably, there has not been an evidentiary hearing in this case; and, for the most part, the only "facts" in the record

are the ones asserted in the parties' legal memoranda and at oral arguments. For example, although both parties discuss and quote language in the trust agreements, neither party supplied a copy of the trust agreement or the account and its location.

The trial court held oral arguments on May 28, 2015, and entered its final order on June 24, 2015, dismissing the complaint. In its written order, the trial court explained that it had discretion under KRS 454.210, the Kentucky "Long Arm Statute" to hear the matter, and it declined jurisdiction since the trust property was personal in nature, not located in Kentucky during any relevant time period, not a part of Audrey's estate, and the alleged misdeeds did not occur in Kentucky. Carolyn appeals this decision. Still, during oral arguments, the trial court judge opined that although he believed personal jurisdiction existed, based on the "permissive" language in the statute, he was declining the matter.

## STANDARD OF REVIEW

 When considering a motion to dismiss under Kentucky Rules of Civil Procedure (CR) 12.02, the pleadings should be liberally construed in a light most favorable to the plaintiff and all allegations taken in the complaint to be true. *Mims v. Western–Southern Agency, Inc.*, 226 S.W.3d 833, 835 (Ky. App. 2007). Further, the issue of personal jurisdiction is a legal question, and hence, we review the issue *de novo. Appalachian Reg'l Healthcare, Inc. v. Coleman*, 239 S.W.3d 49, 53–54 (Ky. 2007) (citations omitted).

## ANALYSIS

The primary issue in this matter is whether the trial court erred in dismissing the Complaint when it concluded that the personal jurisdiction was discretionary. Besides the issue of personal jurisdiction, Carolyn argues that the trial court has subject matter jurisdiction over the matter. It is clear under KRS 23A.010(1), that the trial court has subject matter jurisdiction.

Returning to the issues of personal jurisdiction, we note that Carolyn argues that the trial court erred in concluding it had discretion to decline jurisdiction. She proffers that the trial court had personal jurisdiction over Melinda because the ancillary probate matter involves Kentucky real property, issues about the trust took place in Kentucky through Melinda's agents, and Melinda has beneficiary status under the trust. Consequently, Carolyn maintains that because the trust has its situs in Kentucky, all beneficiaries of the trusts are subject to the jurisdiction of Kentucky courts.

Melinda responds that the trial court did not err in declining personal jurisdiction since Carolyn is a nonresident of Kentucky; the action concerns a Montana decedent and her personal property, which is not located in Kentucky. In particular, Melinda believes that the trial court did not err in declining to exercise jurisdiction since the alleged wrongful withdrawal of trust funds took place outside of Kentucky and there is no settlement agreement. Further, even if there were a settlement agreement, the performance of any actions related to it would not take place in Kentucky.

 Since our review is *de novo*, we first consider the legal parameters that guide the imposition of personal jurisdiction on nonresidents. The purpose of Kentucky's long-arm statute, KRS 454.210, "is to permit Kentucky courts to exercise personal jurisdiction over nonresident defendants while complying with federal constitutional due process." *Cummings v. Pitman*, 239 S.W.3d 77, 84 (Ky.2007) (overruled on other grounds by *Caesars*

*Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011).

The long-arm statute is fundamental to our review, and accordingly, we begin our analysis by considering the relevant provisions of the statute. First, Carolyn relies on KRS 454.210(1) to propose that the trial court has personal jurisdiction over Melinda. She references the statute's language, which says that "[a]s used in this section, 'person' includes an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who is a nonresident of this Commonwealth." This section of statute, however, does not confer personal jurisdiction but merely defines "person" under the statute. The fact that Melinda is the personal representative of her mother's estate does not establish that the trial court had personal jurisdiction but only establishes that she meets the definition under the statute of "person."

In fact, Kentucky law requires that a proper analysis of long-arm jurisdiction over a nonresident defendant consists of a two-step process. *Caesars Riverboat Casino, LLC*, 336 S.W.3d at 57. The review must proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. *Id.* If the action does not fit into one of the enumerated categories, then *in personam* jurisdiction may not be exercised. *Id.* But should the trial court determine that the statute is applicable, a second step is necessary to ascertain whether the exercise of personal jurisdiction over the nonresident defendant offends the nonresident's federal due process rights. *Id.*

Under KRS 454.210(2)(a), there are nine provisions, which permit a trial court to exercise *in personam* jurisdiction. Here, the trial court held a hearing on personal jurisdiction. At the hearing, the trial court judge declared that he had *in personam* jurisdiction, but he then interpreted the language in KRS 454.210(2)(a) that "[a] court **may** exercise personal jurisdiction" as giving him discretion to decline jurisdiction. (Emphasis added.) We disagree with the trial court's interpretation.

"May" is defined in Black's Law Dictionary both as permissive as well as providing possibility. *Black's Law Dictionary*, 10th ed. 2014. Our evaluation of the language of the pertinent statute dictates that the use of "may" in the KRS 454.210(2)(a) refers to a trial court's authority for personal jurisdiction if one of the nine conditions outlined exists. The trial court's order states that acceptance of jurisdiction is discretionary. However, the statute outlines the matters in which a trial court is able to have personal jurisdiction over nonresidents rather than providing a trial court with the discretion to decline jurisdiction.

Our analysis is bolstered by the reasoning in *Roos v. Kentucky Ed. Ass'n*, 580 S.W.2d 508, 509 (Ky. App. 1979), which stated that, "absent compelling or unusual circumstances, a court is duty bound to hear cases within its vested jurisdiction." This same case recognizes that *forum non conviens* may provide a trial court with an exception to this duty. Nonetheless, the application of *forum non conviens* was not addressed here.

In the case at hand, the trial court stated that it "declined to accept discretionary personal jurisdiction." Consequently, our analysis can go no further since we are unable to discern whether the trial court had *in personam* jurisdiction because it did not clarify its opinion that personal jurisdiction was present. Therefore, notwithstanding that our review of jurisdiction is *de novo*, we cannot make a legal judgment on the trial court's com-

ment that personal jurisdiction existed since we do not know its rationale for this statement. The trial court did not specify under which enumerated provision or provisions, it had personal jurisdiction. Consequently, as a reviewing court, we are not able to determine the legal efficacy of the decision that personal jurisdiction existed. Therefore, we vacate this decision and remand for a consideration of whether personal jurisdiction exists in this matter.

Upon remand, if it is ascertained that personal jurisdiction exists, the trial court is still permitted to consider *forum non conviens*.

Keeping in mind that the ancillary probate matter was opened in Kentucky solely to probate real property located in Lexington, Kentucky, the trial court's consideration of whether personal jurisdiction over Melinda exists will necessitate addressing whether a settlement agreement exists, whether the situs of the trust is in Kentucky, and whether the trust, which passes to its beneficiaries outside probate, provides personal jurisdiction over Melinda in Kentucky. Clearly, we are unable to consider these issues since it is fundamental to appellate jurisdiction that the Court of Appeals cannot consider "evidence" that was not part of the record before the trial court. *Heltsley v. Frogge*, 350 S.W.3d 807, 811 (Ky. App. 2011).

## CONCLUSION

Based on the reasoning above, we vacate the Fayette Circuit Court's order declining personal jurisdiction and remand for a determination of whether *in personam* jurisdiction exists under Kentucky's long-arm statute.

ALL CONCUR.