RENDERED: FEBRUARY 5, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0664-MR

DIADAN HOLDINGS, LTD                          APPELLANT

           APPEAL FROM JEFFERSON CIRCUIT COURT
v.         HONORABLE SUSAN SCHULTZ GIBSON, JUDGE
           ACTION NO. 19-CI-002769

SHAWN A. DRISCOLL                               APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, COMBS, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE: DiaDan Holdings, Ltd appeals from an order of the

Jefferson Circuit Court which denied its motion seeking summary judgment and

confirmation of a foreign judgment. Finding no error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On September 24, 2009, Appellant issued a promissory note to Appellee Shawn A. Driscoll. The note stated that Appellee promised to pay Appellant $10,000, plus interest. The note also stated that payments were to be made at Appellant's office in Halifax, Nova Scotia. Further, the note stated that it "shall be construed in accordance with the laws of the Province of Nova Scotia and shall be treated in all respects as a Nova Scotia contract." Finally, the note ended the following way: "DATED at Halifax, Nova Scotia, this 24th day of September, 2009." On September 5, 2012, Appellant issued another promissory note to Appellee. This one was for $38,220, plus interest. This note also stated that payments were to be made at Appellant's office in Nova Scotia, that it was to be a Nova Scotia contract, and that it was to be construed pursuant to Nova Scotia laws. It too stated that it was "DATED at Halifax, Nova Scotia." Both notes were signed by Appellee. Appellee claims in an affidavit contained in the record that he has never been to Nova Scotia. He also claims that he signed the first note in Louisville, Kentucky and the second note in Los Angeles, California. Appellee is currently a resident of Jefferson County, Kentucky. [1]

---

[1] At the time the notes were executed, Appellee was friends with the owner of Appellant. It is not clear from the record what kind of business Appellant is, nor is it clear that Appellant loans people money as a regular part of its business.

Appellee received the funds contemplated by the notes, but he made no payments on either note. On October 18, 2016, Appellant instituted a collection action in Nova Scotia against Appellee. Appellee accepted service of the Nova Scotia complaint in January of 2017.[2] Despite being aware of the action, Appellee ignored it and made no appearance in the Nova Scotia action. On April 21, 2017, Nova Scotia's Supreme Court entered an order granting default judgment to Appellant in the amount of $61,377.39.[3]

On May 6, 2019, Appellant filed a Complaint to Domesticate Foreign Judgment in the Jefferson Circuit Court. Appellant requested that the court deem the Nova Scotia judgment valid and enforce it against Appellee. Appellee filed an answer in which he raised multiple defenses, including that the default judgment is void because the Nova Scotia court lacked personal jurisdiction.

On February 14, 2020, Appellant filed a motion for summary judgment and confirmation of the foreign judgment. Appellee responded to the motion and again raised the issue of lack of personal jurisdiction. On May 8, 2020, the trial court entered an order denying the motion. The court held that the Nova

[2] Appellee was somewhere in the United States when he accepted service of process, but the record is not clear as to where he was specifically.

[3] This amount included the principal amount of the notes and the interest that had accrued.

Scotia court did not have personal jurisdiction over Appellee. This appeal

followed.[4]

## ANALYSIS

> The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. . . . "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." Summary "judgment is only proper where the movant shows that the adverse party could not prevail under any circumstances." Consequently, summary judgment must be granted "[o]nly when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor[.]"

*Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996) (citations omitted). In

addition, "[t]he question of jurisdiction is ordinarily one of law, meaning that the

standard of review to be applied is [*de novo*]." *Appalachian Regional Healthcare,*

*Inc. v. Coleman*, 239 S.W.3d 49, 53-54 (Ky. 2007) (citations omitted).

Before we examine Appellant's argument on appeal, we will first

discuss how a foreign judgment is enforced in Kentucky.

> A copy of any foreign judgment authenticated in accordance with the Act of Congress or the statutes of

---

[4] Generally, an order denying a motion for summary judgment is interlocutory and not appealable. *Ford Motor Credit Co. v. Hall*, 879 S.W.2d 487, 489 (Ky. App. 1994). The exception to this rule is when the order adjudicated the issues on the merits as a matter of law. *Id.* That exception applies here. The order denying Appellant's motion for summary judgment denied Appellant the opportunity to enforce the foreign judgment and essentially dismissed its complaint.

this state may be filed in the office of the clerk of any court of competent jurisdiction of this state. The clerk shall treat the foreign judgment in the same manner as a judgment of any court of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a court of this state and may be enforced or satisfied in like manner.

Kentucky Revised Statutes (KRS) 426.955. "In KRS 426.950 to 426.975 'foreign judgment' means any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this Commonwealth." KRS 426.950. "The law in Kentucky is that a sister state's judgment is entitled to full faith and credit and to registration if the judgment is valid under that state's own laws." *Sunrise Turquoise, Inc. v. Chemical Design Co., Inc.*, 899 S.W.2d 856, 857-58 (Ky. App. 1995) (citation omitted). There is no argument here that the Canadian judgment cannot be enforced in Kentucky, and the parties agree that the above laws regarding foreign judgments apply. To summarize, the Nova Scotia judgment can be enforced against Appellee in Kentucky if it was valid under Nova Scotia's laws.

Appellant's argument on appeal is that the trial court applied the incorrect analysis when determining the Nova Scotia judgment was invalid for lack of personal jurisdiction. The trial court discussed how personal jurisdiction is obtained in Canada by citing to *Morguard Investments Ltd. v. De Savoye*, [1990] 3 S.C.R. 1077 (Can.), and *Harbert Distressed Investment Master Fund Ltd. v.*

-5-

*Calpine Canada Energy Finance II ULC*, (2005) 235 N.S.R. 2d 297 (Can. N.S. S.C.). The court then discussed Kentucky's long-arm statute and the personal jurisdiction rules required by the Due Process Clause of the Fourteenth Amendment. Appellant claims that *Morguard* and *Harbert* are outdated and the rule in *Van Breda v. Village Resorts Ltd.*, [2012] 1 S.C.R. 572 (Can.), should be followed. Appellant also argues that there were sufficient contacts with Nova Scotia to satisfy due process. We disagree with Appellant and believe the trial court made no error.

A brief history of Canada's personal jurisdiction jurisprudence is required. In *Morguard*, 3 S.C.R 1077 at ¶ 51, the Supreme Court of Canada held that personal jurisdiction of a foreign defendant is allowed if that defendant has a "real and substantial connection" to the jurisdiction where the case was filed. The "real and substantial connection" test was then expanded upon by courts in Canada and a set of factors was developed to help a court decide if there were real and substantial connections to a jurisdiction. In *Harbert*, 235 N.S.R. 2d at 297 ¶ 82, the Nova Scotia Supreme Court listed the following factors to consider when determining real and substantial connections:

> (1) The connection between the forum and the plaintiff's claim;
>
> (2) The connection between the forum and the defendant;
>
> (3) Unfairness to the defendant in assuming jurisdiction;

(4) Unfairness to the plaintiff in not assuming jurisdiction;

(5) The involvement of other parties to the suit;

(6) The Court's willingness to recognize and enforce an extra-provincial judgment rendered on the same jurisdictional basis;

(7) Whether the case is interprovincial or international in nature; and

(8) Comity and the standards of jurisdiction, recognition and enforcement prevailing elsewhere.

Additionally, "none of the above factors are [sic] determinative and [] all relative factors should be considered and weighed together." *Id.* at ¶ 83.

*Van Breda*, *supra*, which Appellant argues should have been used to make a determination, was then rendered in 2012. There, the Supreme Court of Canada held that when considering tort actions, there are four presumptive factors showing a connection to the jurisdiction.

[I]n a case concerning a tort, the following factors are presumptive connecting factors that, *prima facie*, entitle a court to assume jurisdiction over a dispute:

(a) the defendant is domiciled or resident in the province;

(b) the defendant carries on business in the province;

(c) the tort was committed in the province; and

(d) a contract connected with the dispute was made in the province.

*Van Breda*, *supra* at ¶ 90.

> The presumption of jurisdiction that arises where a recognized connecting factor . . . applies is not irrebuttable. The burden of rebutting the presumption of jurisdiction rests, of course, on the party challenging the assumption of jurisdiction. That party must establish facts which demonstrate that the presumptive connecting factor does not point to any real relationship between the subject matter of the litigation and the forum or points only to a weak relationship between them.

*Id.* at ¶ 95.

We will begin with Appellant's interpretation of Canadian personal jurisdiction law. As stated above, Appellant argues that the trial court should have used the *Van Breda* factors instead of the *Harbert* factors. This argument was not raised before the trial court. Appellant did not mention *Van Breda* in any pleadings before the Jefferson Circuit Court. In fact, Appellant relied solely on *Morguard* and *Harbert* when making its argument for summary judgment. As this issue was not raised below, it is not preserved for our review. "The Court of Appeals is without authority to review issues not raised in or decided by the trial court." *Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989) (citations omitted); *see also Shelton v. Commonwealth*, 928 S.W.2d 817, 818 (Ky. App. 1996). "[E]rrors to be considered for appellate review must be precisely preserved and identified in the lower court." *Skaggs v. Assad, by and through Assad*, 712 S.W.2d 947, 950 (Ky. 1986) (citation omitted).

-8-

*Arguendo*, even if this argument had been preserved, we find it unpersuasive. *Van Breda* indicated that the four new real and substantial connecting factors were only to be considered for tort cases. *Van Breda*, 1 S.C.R. 572 at ¶ 90. Appellant cites to no cases from Nova Scotia or the Supreme Court of Canada showing that the *Van Breda* factors are to be used for contractual issues. This Court's own research into this issue also found no case law to support Appellant's position. We therefore conclude that the trial court's utilization of the *Harbert* factors was appropriate.

We will now apply the *Harbert* factors to this case. The first factor is the connection between the forum and the plaintiff's claim. Here, the notes state that they are to be interpreted as Nova Scotia contracts and shall be interpreted according to Nova Scotia law. They further provide the payments were to be made in Nova Scotia. The notes also seem to indicate that they were executed in Nova Scotia by the "Dated at Halifax, Nova Scotia" language. Appellant also claims that the money came from a Nova Scotia bank, but there is no evidence in the record to support that claim.

Next, we look at the connection between the forum and the defendant. Appellee is a resident of Jefferson County, Kentucky, and he stated via affidavit that he has never been to Nova Scotia. Appellee also stated via affidavit that the

notes were executed in the United States. There is also no evidence in the record that Appellee has ever conducted any business in Canada.

As for the third factor, the unfairness to the defendant in assuming jurisdiction, Nova Scotia is far away from his residence, over 1,500 miles. Additionally, the notes were executed in the United States, the money was received in the United States, and all evidence regarding their execution would seem to be in this country.

As for the unfairness to the plaintiff in not assuming jurisdiction, the notes clearly contemplated any action seeking recovery would occur in Nova Scotia.

The fifth factor, the involvement of other parties to the suit, does not apply in this case.

As for the sixth factor, the Canadian court's willingness to recognize and enforce an extra-provincial judgment rendered on the same jurisdictional basis, it is likely, based on the discussion of Canadian jurisdictional case law above, that a Nova Scotia court would not enforce a judgment that was based on similar facts as we have here: a contract executed outside of the jurisdiction of the enforcing court, a defendant who has never been to the enforcing court's jurisdiction, and a defendant who has never conducted business in the enforcing court's jurisdiction.

The seventh factor, whether the case is interprovincial or international, would weigh in Appellee's favor as it would be very inconvenient for Appellee to travel internationally and most of the evidence regarding these transactions would be in the United States.

As for the eighth factor, the standards of jurisdiction, recognition, and enforcement prevailing elsewhere, we will have to examine jurisdictional requirements of Kentucky. In Kentucky

> the proper analysis of long-arm jurisdiction over a nonresident defendant consists of a two-step process. First, review must proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then *in personam* jurisdiction may not be exercised. When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011).

KRS 454.210, Kentucky's long-arm jurisdiction statute, states in pertinent part:

> (2) (a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:
>
> 1. Transacting any business in this Commonwealth;
>
> 2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth;

5. Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this Commonwealth when the seller knew such person would use, consume, or be affected by, the goods in this Commonwealth, if he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth;

6. Having an interest in, using, or possessing real property in this Commonwealth, providing the claim arises from the interest in, use of, or possession of the real property, provided, however, that such in personam jurisdiction shall not be imposed on a nonresident who did not himself voluntarily institute the relationship, and did not knowingly perform, or fail to perform, the act or acts upon which jurisdiction is predicated;

7. Contracting to insure any person, property, or risk located within this Commonwealth at the time of contracting;

8. Committing sexual intercourse in this state which intercourse causes the birth of a child when:

a. The father or mother or both are domiciled in this state;

b. There is a repeated pattern of intercourse between the father and mother in this state; or

c. Said intercourse is a tort or a crime in this state; or

9. Making a telephone solicitation, as defined in KRS 367.46951, or a charitable solicitation as defined in KRS 367.650 via telecommunication, into the Commonwealth.

As for federal due process, in order for a court to have personal jurisdiction over a defendant, that defendant must have minimum contacts with the jurisdiction sufficient enough that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (citations omitted).

> The three-pronged test for minimum contacts . . . requires that: (1) defendant has purposely availed itself of the privilege of acting within the state; (2) the cause of action must arise from defendant's activities; and (3) enough connections to the state must exist so that jurisdiction would be reasonable. In terms of a due process analysis, the defendant's connection must be such "that he should reasonably anticipate being haled into court there."

*Sunrise Turquoise*, 899 S.W.2d at 858 (citations omitted).

-13-

Here, if Appellant were a resident of Kentucky and the notes had been executed by Appellee in Nova Scotia, Appellant could not bring suit in Kentucky against Appellee because none of the KRS 454.210 factors applies. Furthermore, while the notes state that the contract should be construed as a Nova Scotia contract, we do not believe that alone is sufficient to satisfy the minimum contacts requirement of federal due process.

## CONCLUSION

After examining the eight *Harbert* factors, Kentucky's long-arm statute, and federal due process, we conclude that the trial court correctly denied Appellant's motion for summary judgment and confirmation of the foreign judgment. The *Harbert* factors determining personal jurisdiction in Nova Scotia weigh more heavily in favor of Appellee. The only fact in Appellant's favor is that the notes state they are to be construed as Nova Scotia contracts. Appellee executed the notes in the United States, has never set foot in Nova Scotia, does not do business in Nova Scotia, and any evidence regarding the execution of the notes would seem to be in the United States. There is no evidence in the record regarding who drafted the notes, how Appellee acquired the notes, whether the money was solicited by Appellee or offered by Appellant, or where the money given to Appellee came from. Based on the foregoing, we affirm the judgment of the Jefferson Circuit Court.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Matthew F. Coogle
Patrick T. Eavenson
Louisville, Kentucky

BRIEF FOR APPELLEE:

T. Morgan Ward, Jr.
Bethany A. Breetz
Louisville, Kentucky