NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0269n.06

No. 24-5958

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SARAH CORDLE, by and through her next friend Dorothy Cordle, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| v. | ) ) | |
| ENOVIS CORPORATION; COLFAX CORPORATION; DJO GLOBAL, INC.; DJO, LLC, | ) ) ) | |
| Defendants-Appellees. | ) ) | OPINION |

Before: THAPAR, READLER, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Sarah Cordle alleges that she suffered severe injuries when her prescribed knee brace slipped and malfunctioned while she was playing softball. Through her mother, she sued various companies she claims were involved in designing, manufacturing, and distributing this purportedly defective knee brace. The district court concluded that Cordle, even after filing an amended complaint, failed to demonstrate that the court had personal jurisdiction over one of the defendants and failed to plausibly allege that each defendant took part in causing her injury. So it dismissed her case against all defendants. In this appeal, Cordle challenges the personal jurisdiction ruling and argues that the district court should have allowed her to amend her complaint a second time. We affirm.

**BACKGROUND**

In her original complaint, Cordle sued Enovis Corporation and DJO Global, Inc., in Kentucky state court for defective "design, assembly, manner of manufacturing, and distribution" of a knee brace (called the "Donjoy") that her doctor had prescribed.[1] Compl., R. 1-1, PageID 16. She says the defendants represented that the brace could provide support during "normal daily activities including competitive athletic events," but that the brace allegedly "broke, slipped, bent and mal-functioned" despite her wearing it as intended. *Id.* at PageID 15–16. The brace's malfunction caused knee injuries that required multiple surgeries, physical therapy, medication, and follow-up treatment.

DJO Global removed the case to federal court. It then moved to dismiss the case for lack of personal jurisdiction and failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(2), (b)(6). Before the district court ruled on the motion, Cordle—with a magistrate judge's permission—amended her complaint. The amended complaint differed from the original in a few ways; mainly, it added DJO, LLC as a defendant (not to be confused with existing defendant DJO Global), described how Cordle's doctor had prescribed this particular brace, and stated that the defendants' representations induced her to take part in physical activities she otherwise would have avoided.

DJO Global moved to dismiss the amended complaint on the same grounds as before. The district court concluded that it had personal jurisdiction over DJO Global. But, after examining Kentucky precedent interpreting the state's product liability statute, the district court determined that Cordle had not stated a claim under the statute because she had not plausibly alleged "*how* the

---

[1] Cordle also sued Colfax Corporation. But because the parties agree that Colfax Corporation changed its name to Enovis Corporation, and the two are in fact the same entity, we refer only to Enovis in this opinion.

brace was defective." Order, R. 27, PageID 289–90. It emphasized that Cordle had been made aware of the "potential for dismissal on this basis" through DJO Global's first motion, but that she failed to address it when amending her complaint. *Id.*

At the same time the district court dismissed the claims against DJO Global, it ordered Cordle to serve the amended complaint on Enovis and DJO, LLC, the two remaining defendants, who apparently had not yet been served. Both Enovis and DJO, LLC subsequently moved to dismiss the amended complaint for insufficient service of process, failure to comply with the service order, and failure to state a claim upon which relief could be granted. Enovis also moved to dismiss for lack of personal jurisdiction.

The district court granted their motions to dismiss. Unlike with DJO Global, the district court concluded that it did not have personal jurisdiction over Enovis. It also determined that Cordle failed to state a claim against either Enovis or DJO, LLC because, as before, she did not sufficiently allege how the brace was defective. Moreover, Cordle did not plausibly allege what role (if any) each defendant played in designing, manufacturing, or distributing the brace or otherwise causing Cordle's injury.

In the same order, the district court denied Cordle's motion to amend her complaint a second time. It concluded that Cordle's proposed second amended complaint still failed to sufficiently allege causation, a required element of her claims. While the proposed complaint seemed to provide additional allegations as to how the brace was defective, like earlier iterations of the complaint, the proposed second amended complaint broadly attributed the defects in design, manufacturing, and distribution to "the Defendants as a group." Order, R. 71, PageID 578. It did not allege any specific action or inaction by any particular defendant that contributed to Cordle's

injury. Because the district court determined that this shortcoming would doom her claim under Kentucky caselaw, it denied leave to amend as futile.

Cordle timely appealed.

## ANALYSIS

Cordle appeals the district court's decision on two grounds. *First*, she argues that the court had personal jurisdiction over Enovis. *Second*, she argues that the district court should have granted her leave to file a second amended complaint. We discuss each issue in turn.

## I.      Personal Jurisdiction Over Enovis

We review de novo the district court's determination that it lacked personal jurisdiction over Enovis. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). Where, as here, the court is sitting in diversity, we look to the law of the forum state to determine whether personal jurisdiction is proper. *Blessing v. Chandrasekhar*, 988 F.3d 889, 901 (6th Cir. 2021). Under Kentucky law, determining whether a court can exercise jurisdiction over a non-resident defendant is a "two-step process." *Id.* (citing *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011)). "First, the cause of action must arise from the type of conduct or activity enumerated in Kentucky's longarm statute." *Id.* Relevant here, the longarm statute allows Kentucky courts to exercise personal jurisdiction over a party "bas[ed]" on its "transacting any business" in the state. Ky. Rev. Stat. § 454.210(2)(a). If the Kentucky longarm statute is satisfied, the court must then determine whether the exercise of personal jurisdiction is consistent with federal due process. *Blessing*, 988 F.3d at 901.

As an initial matter, Cordle did little to make this showing. Cordle did not directly address either prong of the two-step framework, making no reference to either the Kentucky longarm statute or federal due process. Cordle merely noted that Enovis was registered to do business in

Kentucky at the time the alleged injury occurred. The district court called this response "insufficient," explaining that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." Order, R. 71, PageID 581 (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997)). It further explained that, under existing caselaw, Enovis's registration to do business in Kentucky and its appointment of a registered agent in the state did not suffice to satisfy Kentucky's longarm statute. We agree. Evidence of registration alone does not demonstrate that Cordle's claim "arises from" Enovis's transacting business in the state, as required by the statute. *See Caesars*, 336 S.W.3d at 55. While Cordle provides new facts on appeal regarding the transactions Enovis allegedly conducted in the state, we will not evaluate them in the first instance. *See United States v. Richardson*, 385 F.3d 625, 631 (6th Cir. 2004).

Cordle responds that she did not need to provide any further explanation before the district court because Enovis is the parent company of, and acted in concert with, DJO Global, which the district court had already concluded it had jurisdiction over. So, she reasons, the "same factors, rationale and findings" underlying the district court's exercise of jurisdiction over DJO Global "should govern as to Enovis," and "[a]ny further comment" would have been "duplicative." Appellant Br. at 27–28. Not so.

The district court's earlier ruling does not absolve Cordle of the responsibility to develop the argument for personal jurisdiction over Enovis. To start, Cordle never alleged in her complaint that Enovis was DJO Global's parent company. And while she mentioned it in her briefing before the district court, it was not to show personal jurisdiction over Enovis. Regardless, for personal jurisdiction, Cordle needs to allege more than Enovis's status as DJO Global's parent company. *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1273–74 (6th Cir. 1998). A plaintiff must

provide "sufficient evidence . . . to conclude that [the parent company] is being brought into court for something that it has done, not for something that [its subsidiary] has done." *Id.* at 1274. Cordle, however, provides only broad, unsupported assertions about the defendants' collective actions to try to demonstrate Enovis's role in the design, manufacturing, and distribution of the knee brace. *See infra* Part II. Without more, she has not provided the factual basis necessary to support personal jurisdiction over Enovis.

Cordle also argues that the district court should have conducted an evidentiary hearing to determine whether it had jurisdiction. We review the district court's decision not to hold such a hearing for abuse of discretion. *See Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Such a hearing is helpful when, for example, "the written submissions raise disputed issues of fact or seem to require determinations of credibility." *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). Cordle's threadbare jurisdictional argument did not create such a dispute, so we cannot say that the district court abused its discretion in declining to hold a hearing before dismissing the claims against Enovis for a lack of personal jurisdiction.

## II.     Leave to Amend

Next, Cordle argues that the district court should have allowed her to amend her complaint—for a second time—to avoid dismissal. Under Federal Rule of Civil Procedure 15, courts should "freely give" leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the district court did not need to grant Cordle leave to amend if her proposed changes would have been futile; that is, if even after her proposed changes, the complaint "still could not withstand a Rule 12(b)(6) motion to dismiss." *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 617 (6th Cir. 2024) (internal quotation omitted); *see also Riverview Health Inst. LLC v.*

*Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

We review de novo the district court's determination that Cordle's proposed amendments would not have saved her complaint from dismissal. *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 346 (6th Cir. 2007). Because we are sitting in diversity, Kentucky law governs the substance of Cordle's claims. *See Greer*, 114 F.4th at 613. But because the case is in federal court, federal pleading standards apply. *Id.* Therefore, to survive a motion to dismiss, Cordle's proposed second amended complaint "must contain sufficient factual matter, accepted as true" to state a claim under Kentucky product liability law "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). If it fails to do so, the proposed amendments would be futile. *Greer*, 114 F.4th at 617.

Even with her changes, Cordle's proposed second amended complaint fails to adequately plead causation. To state a claim under the Kentucky product liability statute, Cordle must plausibly allege that "the defendant's conduct was a substantial factor in bringing about [her] harm." *King v. Ford Motor Co.*, 209 F.3d 886, 893 (6th Cir. 2000); *see also Stiens v. Bausch & Lomb Inc.*, 626 S.W.3d 191, 199 (Ky. Ct. App. 2020). However, Cordle's proposed second amended complaint contains only vague assertions that all defendants caused her injury through defective design, manufacturing, and distribution of the knee brace. She provides no further allegations connecting each defendant to the defective product. The proposed complaint hardly tells us who the defendants are or what type of business they're engaged in, alleging only that they are all "foreign entities doing business within the Commonwealth of Kentucky." Proposed Second Am. Compl., R. 36, PageID 305. Put differently, Cordle's proposed complaint at most alleges that she suffered an injury from a defective knee brace. But it does not support a "reasonable inference

that [each] *defendant* is liable for the" alleged defect. *Iqbal*, 556 U.S. at 678 (emphasis added); *see also Red Hed Oil, Inc. v. H.T. Hackney Co.*, 292 F. Supp. 3d 764, 775 (E.D. Ky. 2017).

Cordle again counters that the defendants are essentially "one organization working in concert." Appellant Br. at 14. She points to parent-subsidiary relationships, and states that the defendants "were likely all involved in the manufacture, distribution and sale of the defective brace to [Cordle]." *Id.* at 15. To be sure, Kentucky law recognizes a "concert of action" theory for product liability claims, which allows a plaintiff to hold multiple defendants jointly and severally liable for an injury. *Farmer v. City of Newport*, 748 S.W.2d 162, 164 (Ky. Ct. App. 1988). But as a prerequisite to invoking this theory, a plaintiff must "establish that the defendants acted by cooperative or concerted activities." *Hogan v. Goodrich Corp.*, No. Civ.A. 05-159-C, 2006 WL 149011, at *5 (W.D. Ky. Jan. 17, 2006) (quoting *Dawson v. Bristol Lab'ys*, 658 F. Supp. 1036, 1040 (W.D. Ky. 1987)). Cordle's proposed second amended complaint is utterly devoid of factual allegations showing the defendants worked together. And, again, regardless of how much weight we should give parent-subsidiary relationships in discerning concert of action—a question we do not consider here—Cordle raises this relationship only in her briefings, and not in her proposed complaint. While "we read the complaint generously, we do not presume facts not alleged therein." *Schwamberger v. Marion Cnty. Bd. of Elections*, 988 F.3d 851, 856 (6th Cir. 2021). We, of course, understand that plaintiffs cannot always know at the outset the exact breakdown of collective actors' responsibilities. *See Dawson,* 658 F. Supp. at 1039–40. But Cordle must still plead a plausible case that the defendants acted collectively to cause her injury. And she did not even include the basic information about the companies that she now asks us to consider in her proposed second amended complaint. The district court accordingly did not err in determining the proposed amendments would be futile.

Cordle further argues on appeal that, even if she was not allowed to amend her complaint, the district court should have at least given her the opportunity to provide a more definite statement under Federal Rule of Civil Procedure 12(e) before dismissing her case. Rule 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The defendants did not make such a motion. And DJO Global's motion to dismiss put Cordle on notice of her complaint's potential deficiencies at the outset of this litigation. Yet, after three draft complaints—the original, amended, and proposed second amended complaints—Cordle still failed to plausibly plead causation. The district court was not obligated to provide her yet another bite at the apple.

## CONCLUSION

For these reasons, we affirm.